Minute Order Form (06/97)

JSY

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3774 | **DATE** | 5/28/2002 |
| **CASE TITLE** | Robert E. Taylor vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons stated in the attached Memorandum Opinion and Order, plaintiff Robert E. Taylor's motion for summary judgment [15-1] is denied and defendant Commissioner's motion for summary judgment [16-1] is granted. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 29 2002 | |
| | Notified counsel by telephone. | | date docketed | 17 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 5/28/2002 | |
| KF | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | KF mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| ROBERT E. TAYLOR | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 00 C 3774 |
| | ) |
| JO ANNE B. BARNHART, Acting | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

The plaintiff, Robert E. Taylor has brought a motion for summary judgment seeking judicial review of the final decision of defendant Jo Anne B. Barnhart,[1] who denied Taylor's claim for Social Security disability benefits under the Social Security Act, 42 U.S.C. §§416(i), 423(d). Plaintiff now appeals that decision in federal court as permitted by 42 U.S.C. §§405(g), which grants federal courts the power to review the Social Security Commissioner's final decisions. Before the Court are cross motions for summary judgment. For the following reasons, the Court denies Plaintiff's request that the decision of the ALJ be reversed, and therefore affirms the Administrative Law Judge's decision that Plaintiff was not disabled for the closed period of February 1, 1996 through May 31, 1999.

---

[1] At the time this matter was filed, the Commissioner of Social Security was Larry G. Massanari.



I.   **PROCEDURAL HISTORY**

Robert Taylor filed for Social Security disability benefits on March 10, 1997, asking for a period of disability dating back to February 1, 1996. (R. 156). The Social Security Administration initially denied Plaintiff's claim on April 22, 1997. The Administration, on reconsideration, affirmed the denial of Plaintiff's claim on June 27, 1997 (R. 95); subsequently, Plaintiff filed a request for a hearing on July 3, 1997. (R. 98). On March 31, 1998, a hearing was held before Administrative Law Judge ("ALJ") Robert T. Karmgard. Taylor, represented by counsel, appeared and testified at the hearing. (R. 14). The ALJ issued a written opinion on August 27, 1998, denying Plaintiff's claims. (R. 14-24). ALJ Karmgard concluded that Taylor "was not under a 'disability,' as defined in the Social Security Act" because Taylor retained the residual functional capacity[2] ("RFC") to perform sedentary work, subject to some limitations,[3] and there were a significant number of jobs in the national economy that Taylor could perform. (R. 23).

Plaintiff then filed a timely request for review of the ALJ's decision on September 8, 1998. (R. 9). The Appeals Counsel denied Taylor's request on April 24, 2000, finding that there was no basis under the Social Security Administration regulations for granting a request to review the ALJ's decision. (R. 6). The Appeals Council's denial of review made ALJ Karmgard's decision the final decision of the Commissioner of Social Security. See *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); C.F.R. § 404.981.

---

[2] "Residual functional capacity" is that which a claimant can still do despite his physical and mental limitations. *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999); 20 C.F.R. §404.1545(a).
[3] "The claimant's residual functional capacity for the full range of sedentary work is reduced by the option to alternate between sitting and standing every two to three hours for five to 10 minutes on each occasion and only occasional contact with the public." (R. 23).

2

## II. PLAINTIFF'S TESTIMONY

At the time of the March 31, 1998 hearing before the ALJ, Robert Taylor was a forty year old man who had an eighth grade education. (R. 41-2). He was able to read and write at least simple English, and perform simple addition and subtraction. (R. 42). Taylor was five feet, nine inches tall, and weighed between 275 and 280 pounds. (R. 42-3). At trial, Taylor testified that his normal weight was between 200 and 250 pounds; he had gained seventy to eighty pounds over the last two and a half years. (R. 43). Plaintiff was engaged in "board up type work" between 1983 and 1996; his last six to seven of those years were spent in a managerial position. (R. 45, 48). While serving as a manager, Plaintiff did "quite a bit" of lifting; he testified to having lifted two or three sheets of sixty-three pound plywood at a time up one or two fights of stairs. (R. 49). On a typical twelve-hour shift, Taylor spent half of his time sitting and half of his time standing or walking. (R. 50).

At the hearing, Plaintiff testified that the injury leading up to his disability occurred in December of 1995 when he slipped off of a ladder at work, landing on his back and tail bone. (R. 44). After the accident, Plaintiff testified that he did not realize how serious the injury was, and returned to work. (R. 45). However, for every week that he worked, he would miss a few days. Id. Taylor's last day of work was in January, 1996. Id. For approximately six to seven months, between January, 1996 and February, 1997, Plaintiff was treated with ultrasounds when he underwent physical therapy with a Dr. Sianas and a physical therapist. (R. 47). Taylor attended three approximately one-hour long appointments per week during this time period. Id. In February, 1997, Plaintiff underwent back surgery. Id. Two weeks after the surgery, Plaintiff underwent an

appendectomy. Id. In May of 1997, approximately three months after the surgeries, Plaintiff returned to work. (R. 46). After his third day of work, Taylor could not bend or stand due to abscesses in his abdomen. Id. The abscesses were drained, and he was treated with antibiotics. (R. 62-3). At the time of the hearing, Plaintiff no longer had any symptoms from the abscesses. (R. 71).

At the hearing, plaintiff claimed to be in constant physical pain. (R. 54). To help control the pain, he was taking Vicodin and Relefin. Id. Plaintiff was also receiving epidural steroid injections; he had received three by the time of the hearing. (R. 55). Those shots caused Taylor's back pain to subside for a few days after they were administered. Id. Due to the pain, Taylor testified that he could no longer perform his previous job as a manager performing board up work. (R. 51). He stated that he could not sit for more that two hours, could not stand for more than fifteen or twenty minutes, could only walk a block and a half, and had lifted items no heavier than a gallon of milk. (R. 52, 57, 71).

Plaintiff further testified that he was very depressed, and had contemplated committing suicide. (R. 58). However, Taylor mentioned that the counseling he has received from Gerry Wesch, Ph. D., a psychologist, has been helpful. (R. 65). Plaintiff was also being treated by a psychiatrist, Dr. Mabocle, who prescribed Zolof and Trazodone. (R. 66).

### III. PLAINTIFF'S MEDICAL EXAMINATIONS

On May 24, 1996, Plaintiff had a lumbar spine MRI that revealed: (1) his vertebral bodies were normal, (2) no focal abnormality at L1/L2 and L2/L3, (3) a small right paracentral bulge at L3/L4 that impinges ventrally upon the cal sac, but not upon the

neuroforamen, (4) no central canal stenosis, (5) images that strongly suggest a herniated disc causing spinal canal stenosis at L4/L5, (6) evidence of a small central bulge at L5/S1 of "doubtful significance", and (7) no subluxation or compression deformity. (R. 270). On September 3, 1996, Plaintiff received a steroid injection from Michael D. Kornblatt, M.D., and also attended physical therapy sessions. (R. 262-67, 270). When Dr. Kornblatt examined Taylor, on September 27, 1996, he found that Taylor "ambulate[d] about the room well...exhibit[ed] good range of motion of the lumbosacral spine without significant pain" and had intact the muscle strength in his lower extremities. (R. 274).

Taylor underwent back surgery on February 4, 1997 that consisted of a left L4-5 partial laminectomy, L4-5 discectomy, decompression of the left L5 nerve root, and a fat graft to exposed nerve root and dura. (R. 281-2). On March 7, 1997, Dr. Kornblatt evaluated Plaintiff and found that he was "doing extremely well;" Taylor was able to walk twelve blocks per day, and his pain had markedly diminished. (R. 338). Dr. Kornblatt stated that Plaintiff could return to "light-duty work, limiting repetitive lifting 5-10 pounds alternating positions" by March 24, 1997. Id. In April of 1997, Dr. Kornblatt reported that Taylor was "doing well regarding his radicular leg pain," Plaintiff was walking up to eight blocks per day, and was no longer taking any pain medication. (R. 331). Furthermore, Dr. Kornblatt's examination revealed that Plaintiff was ambulating well, able to raise his straight leg to a 90-degree angle bilaterally, and had intact his muscle strength and neurovascular status. Id. On May 2, 1997, Dr. Kornblatt reevaluated Plaintiff and found that he had no back pain, minimal left buttock discomfort, and his muscle strength, and neuralgic status were intact. (R. 332). Accordingly, Dr. Kornblatt recommended that

Plaintiff return to work on May 5, 1997. Id. On July 3, 1997, Dr. Kornblatt again evaluated Taylor. (R. 349). During this visit, Dr. Kornblatt found that Plaintiff ambulated around the room well, had an excellent range of motion in his lumbosacral spine, could raise his leg 90 degrees bilaterally without back pain, and had intact his muscle strength, deep tendon reflexes and sensory examination. (R. 349). Also, the x-rays taken revealed "good maintenance of the L4-5 disc space," intact alignment of the lumbosacral spine, and no evidence of disc space infection. Id. Dr. Kornblatt noted that Taylor "has done well postoperatively," and stated that Taylor should be able to return to work after completing a work hardening program, and treatment for depression.

Subsequently, Plaintiff was examined by another physician regarding his back pain, Randolph Chang, M.D. On January 8, 1998, Dr. Chang examined Taylor and found that he was able to walk on his heels and toes bilaterally, he had an antalgic gate, and had normal lower extremity muscles. (R. 447). The range of motion of Taylor's lumbar spine, however, was severely limited.[4] Id. Plaintiff also had mild tenderness to palpitation of his sacroiliac joints, and some pain with the straight-leg raise test. Id. Dr. Chang recommended that Plaintiff undergo epidural steroid injections, attend physical therapy, and lose weight. Id. Pursuant to Dr. Chang's recommendation, Plaintiff received epidural steroid injections. (R. 441-42).

After plaintiff's back surgery in February of 1997, he developed an acute appendicitis and had an appendectomy on February 23, 1997. (R. 297, 299-300). In May of 1997, plaintiff was found to have developed an intra-abdominal abscess. (R.

---

Specifically, Dr. Change noted that "flexon is only about 30% of normal, extension 40%, right and left side bends and right and left rotations about 50% of normal." (R. 447).

423). Intravenous antibiotics were administered, and an abscess drainage catheter was used to treat Plaintiff's abscess. (R. 402, 418, 423).

In a November 16, 1997 report, Ramesh Kharwadker, M.D., the physician who treated Taylor for his abdominal infection, opined that Taylor could repeatedly lift up to ten pounds during an eight-hour workday. (R. 388). Furthermore, Taylor had less than a 20% reduced capacity for sitting, turning, standing, climbing, and stooping, and less than a 50% reduced capacity for pulling, walking, bending and pushing. Id. However, on November 18, 1997, Dr. Kharwadker declared that Taylor was "totally disabled" and would remain in that state at least until July of 1998. (R. 420). James L. Greco, M.D., also examined Plaintiff in regards to his abdominal problems, and opined that the abdominal infection was not expected to last for twelve continuous months, and should not be severe by May, 1998. (R. 423).

In addition to seeking medical treatment for his back and abdominal problems, Taylor has sought medical treatment for mental impairments. On December 22, 1997, the Chicago Department of Public Health diagnosed Taylor with a "Depressive Disorder Not Otherwise Specified". (R. 483). During this mental health assessment, Plaintiff reported that his addictions to marijuana, cocaine, and diet pills were in remission. (R. 482). The Chicago Department of Public Health prescribed 50 mg. of Zoloft, and 50 mg. of Tegretol to help with Plaintiff's depression. (R. 474).

On December 27, 1997, Gilbert M. Hefter, M.D., performed a psychiatric evaluation of Taylor. Dr. Hefter found no manifestation of gross psychopathology or thought disorder, but did find that Plaintiff was moderately depressed. (R. 434-5). Dr. Hefter diagnosed Taylor with "Adjustment Disorder, Chronic with Depressed Mood," and

"Rule Out Pain Disorder Associated with Both Psychological Factors and a General Medical Condition, Chronic." Dr. Hefter further commented that Taylor's "ability to do work-related activities involving understanding, memory, sustained concentration and persistence, and social interaction seems intact, while there is compromise of his adaptation." (R. 435).

On February 10, 1998, Plaintiff had an additional psychological consultation with Dr. Wesch. (R. 488-490). Dr. Wesch diagnosed Plaintiff with "psychological factors affecting chronic back pain" and "pain syndrome with both psychological and physical components." (R. 489). Additionally, Dr. Wesch stated that Plaintiff's "[c]ognitive functions were within normal limits for any gross psychopathology" and that if Plaintiff can follow through with vocational rehabilitation, "he should make an adequate vocational recovery." Id.

## IV. VOCATIONAL EXPERT

At the hearing before ALJ Karmgard, vocational expert ("VE") Meyer Klein testified that an individual with the limitations proposed by the ALJ[5] could perform assembly, packing and cashier jobs at the sedentary level[6]. (R. 82). At the time of the hearing, the VE stated that in the greater Chicago metropolitan area there were

---

[5] ALJ Karmgard asked VE Klein to determine what jobs would be available to a hypothetical male individual between 38 and 40 years old, with an eighth grade education, the same prior work history as Taylor, the ability to read, write, use numbers, climb, stoop, frequently lift up to ten pounds, and sit, stand and walk up to two hours each eight hour day. The hypothetical male also needed to alternate between sitting and standing at intervals of 2 to 3 hours for periods of 5 to 10 minutes on each occasion, and was depressed such that he could not deal directly and closely with the public anymore than occasionally. (R. 76-81).

[6] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §404.1567.

8

approximately 1,500 assembly jobs, 1,000 packing jobs, and 1,250 cashier jobs at the sedentary level. (R. 77,82).

## V.  STANDARD OF REVIEW

In reviewing the final decision of the Commissioner, this Court must accept as conclusive the findings of fact made by the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold the Commissioner's findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Diaz v. Charter*, 55 F.3d 300, 305 (7th Cir. 1995) quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1972). If the record contains such support, the court must affirm the decision of the Commissioner unless she has made an error of law. *Veal v. Bowen*, 833 F.2d 693, 696 (7th Cir. 1987). This court may not reweigh the evidence, re-evaluate the facts, or substitute it own judgment in determining whether a claimant is or is not disabled. *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ). *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). This court may not reconsider an ALJ's credibility determination. *Prince v. Sullivan*, 933 F.2d 598, 601-02 (7th Cir. 1991). Thus, a plaintiff's proof must show that no reasonable person, based upon the record as a whole, could have found as the Commissioner did. *Rucker v. Shalala*, 894 F.Supp. 1209, 1213-14 (S.D. Ind. 1995).

## VI. ANALYSIS

Robert Taylor contests the ALJ's determination that he was not under a "disability," as defined in the Social Security Act, from February 1, 1996 until August 27, 1998, the date of the ALJ's decision. In particular, Taylor claims that the ALJ improperly determined that he had made a significant improvement since his back surgery, and also failed to place adequate weight on the opinions of Plaintiff's treating physicians.

The ALJ must undertake a five-step process to determine whether an adult claimant is disabled under the Social Security Act, and thus unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental ailment. 42 U.S.C §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual is considered disabled only if he is neither able to perform any of his previous work, nor any other work existing in significant numbers in the national economy. 42 U.S.C. §§423(d)(2)(A), 1238c(a)(3)(B); 20 C.F.R. §§404.1520(e), (f), 416.920(e)(f). The standard five-step process set forth in the regulations is as follows:

(1) Is the claimant presently unemployed?

(2) Is the claimant's impairment or combination of impairments severe?

(3) Do his or her impairments meet or exceed any of the specific impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 which the Secretary acknowledges to be conclusively disabling?

(4) If the impairment has not been listed by the Secretary as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform his or her past relevant work?

(5) Is the claimant unable to perform any other work in the national economy given his or her age, education or work experience?
*Ward v. Social Sec. Admin.*, No. 98 C 1905, 2000 WL 1029170 at *4 (N.D.Ill. Jul. 26, 2000) *citing*, Reg. §416.920(a)-(f); *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Under the five part sequential analysis, "[a]n affirmative answer leads to either the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a finding that the claimant is not disabled." *Zalewski v. Heck*, 760 F.2d 160, 162 n.2 (7th Cir. 1985).

In undertaking the five-step process, ALJ Karmgard first determined that Taylor had "not engaged in substantial gainful activity since his alleged onset date" (step one). (R. 16). Next, the ALJ determined that Taylor's chronic back pain, history of an appendectomy with complications, depressive disorder, and adjustment order with depressed mood and pain syndrome were supported by the record and constituted severe impairments (step two). Id. However, the ALJ found that Taylor did not have an impairment or combination of impairments that met or were equal to one listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (step three). Id. At step four, the ALJ found that Taylor retained "the residual functional capacity to perform slightly less than the full range of sedentary work, as defined in the Social Security Regulations." (R. 17). Finally, the ALJ determined that Taylor's impairments were not so severe as to prevent him from performing all work (step five), and thus found that Taylor was not "disabled." (R. 17, 22).

### A. Plaintiff's significant improvement following his back surgery on February 4, 1997.

Plaintiff argues ALJ Karmgard erred when he based his disability assessment, in part, on the determination that Plaintiff made a significant improvement after his February 4, 1997 back surgery. Plaintiff claims that the relief that he felt after the surgery was only temporary. To support the claim that his back pain returned, Plaintiff

11

relies on evidence that after the surgery, he received epidural steroid injections from Dr. Chang, and underwent two additional back surgeries.

The ALJ did not take into account the two surgeries that Dr. Chang performed on June 2 and June 9 of 1999 as this information was not available until after the ALJ had issued his written decision on August 27, 1998. (R. 495-503). Evidence of the subsequent surgeries was submitted to the Appeals Counsel of the Social Security Administration on or about July 9, 1999. (R. 494). New and material evidence is only to be considered by the Appeals Counsel where it "relate[s] to the period on or before the date of the administrative law judge hearing decision." Commissioner's Reg. § 404.970(b). Accordingly, after the ALJ makes his decision, no evidence postdating that decision shall be taken into account by the Appeals Counsel. See *Yousif v. Chater*, 901 F.Supp. 1377, 1382 (N.D. Ill. 1995). Furthermore, when the Appeals Counsel refuses to review the case, as happened in the instant case, federal district and appellate courts are not free to consider the new evidence that was put before the Appeals Counsel. *Eads v. Secretary of the Department of Health and Human Services*, 983 F.2d 815, 817 (7th Cir. 1993). Because the Appeals Counsel denied review of the instant case, this court will only review the decision of ALJ Karmgard; the correctness of the ALJ's opinion rests only on the evidence that was before him. See *Id.* at 817. Therefore, it is improper for this Court to take into account any evidence of plaintiff's surgeries that took place after August 27, 1998.

Although plaintiff complained of back pain, ALJ Karmgard determined that Plaintiff's back impairments did not render him disabled and that he had experienced significant improvement since his 1997 back surgery. The ALJ found that Taylor's

allegations regarding back pain and limitations as to walking, sitting and standing were "not credible." (R. 20). "The ALJ's credibility determinations generally will not be overturned unless they were 'patently wrong.'" *Zurawski* 245 F.3d at 887. According to Social Security Ruling 96-7p, "the ALJ's determination or decision regarding claimant credibility 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Id.* Furthermore, an ALJ may not simply disregard claimants allegations of pain; instead, he or she must take into account: (1) specific attributes of the pain, (2) precipitating and aggravating factors; (3) pain medication taken, and its effects, (4) treatments, other than medication, for the pain, (5) functional restrictions, and (6) the claimant's daily activities. *Pope v. Shalala*, 998 F.2d 473, 485 (7th Cir. 1993) (reversed on other grounds).

ALJ Karmgard based his determination that Taylor had made a significant improvement after the surgery, in large part, on Dr. Kornblatt's evaluations. (R. 17-18). Dr. Kornblatt examined Plaintiff in March, April, May and July of 1997. During these examinations, Dr. Kornblatt found that Plaintiff was "doing extremely well," was walking up to eight blocks per day, ambulating well, and should be able to return to work since he could engage in "light-duty work, limiting repetitive lifting 5-10 pounds alternating positions." (R. 331, 338, 349). The ALJ also took into account Plaintiff's activities of daily living; Plaintiff could perform personal hygiene, prepare simple meals, take out the trash, drive and shop for cigarettes, handle his own finances, visit with friends and

relatives, and walk for about one hour a day.[7] (R. 21, 222-23). Furthermore, the ALJ did not disregard Dr. Chang's administration of epidural injections in response to Plaintiff's claims of back pain, and Plaintiff's claims that his back pain returned only days after the injections. (R. 18). The ALJ also took into account Dr. Chang's January 1998 evaluation of Plaintiff where he found that Taylor was able to walk on his heels and toes bilaterally, and had an antalgic gate, normal lower extremity muscles, mild tenderness to palpitation of his sacroiliac joints, and some pain with the straight-leg raise test. (R. 447).

In light of the information available to and taken into account by ALJ Karmgard, including Dr. Kornblatt's evaluations, Dr. Chang's evaluation and administration of epidural steroid injections, evidence of Taylor's daily activities, his complaints of back pain, and the ALJ's personal observations, it appears that there is substantial evidence supporting the ALJ's assessment that Plaintiff's back pain did not render him disabled. Furthermore, it does not appear that the ALJ's credibility determination was patently wrong. Accordingly, this Court must accept as conclusive ALJ Karmgard's finding of significant improvement.

### B. The ALJ's alleged failure to give due weight to the opinions of Plaintiff's treating physicians.

Plaintiff argues that had ALJ Karmgard given due weight to the opinions of Plaintiff's treating physicians, the evidence would have mandated a finding that Plaintiff was disabled as of February 1, 1996. In particular, Taylor claims that the ALJ improperly placed little weight on Dr. Kharwadkar opinions, ignored the findings of Dr.

---

[7] However, "minimal daily activities . . . do not establish that a person is capable of engaging in substantial physical activity." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Hefter and failed to mention Dr. Greco's opinion. Furthermore, Plaintiff claims that the Social Security Appeals Council chose to ignore the findings of Bernardo Livas, M.D.

In his opinion, the ALJ addressed the opinions of both Dr. Kharwadkar and Dr. Hefter. It is improper for this Court to reweigh the evidence, or re-evaluate the facts. *Luna*, 22 F.3d at 689. However, this Court will look to see if the ALJ made any errors of law. See *Veal*, 833 F.2d at 696. The ALJ "place[d] little weight" on Dr. Kharwadkar's opinion-conclusion that claimant would be "totally disabled" until July of 1998 due to an intra-abdominal infection and an abscess. (R. 420). "Under the Social Security regulations, the Commissioner is charged with determining the ultimate issue of disability." *Clifford*, 227 F.3d at 870. Accordingly, a claimant, "is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'" *Id*. ALJ Karmgard had a legitimate basis for rejecting Dr. Kharwadkar's opinion that Plaintiff was disabled; the report Dr. Kharwadkar made on November 16, 1997 stated that Taylor could repeatedly lift up to ten pounds during an eight hour work day, and could sit, turn, walk, bend, push, stand, climb, stoop, and pull (although his capacity to do so was reduced). (R. 388). Also, it cannot be said that the ALJ improperly ignored Dr. Hefter's findings when he determined that Taylor's mental impairments were not so severe as to prevent him from performing all work since Dr. Hefter himself noted that Taylor's "ability to do work-related activities involving understanding, memory, sustained concentration and persistence, and social interaction seems intact." (R. 435). Because the ALJ " 'minimally articulate[d] his reasons for crediting or rejecting evidence of disability,'" this Court will not substitute the judgment of the ALJ with its own. See *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992).

Plaintiff correctly noted that ALJ Karmgard did not mention Dr. Greco's opinion regarding Plaintiff's abdominal condition in his decision. While "[t]he decision of the ALJ must be based on consideration of all relevant evidence, and the reasons for his conclusions must be stated in a manner sufficient to permit an informed review," *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984), the ALJ "need not provide a written evaluation of every piece of evidence that is presented," *Pugh v. Bowen*, 870 F.2d 1271, 1278 (7th Cir. 1989) (internal quotations and citations omitted). The ALJ must only "articulate at some minimum level his analysis of the evidence in cases in which considerable evidence is presented to counter the agency's position [in order to facilitate a meaningful review]." *Burnett v. Bowen*, 830 F.2d 731, 735 (7th Cir. 1987) (internal quotations and citations omitted).

Dr. Greco opined that Taylor's abdominal infection was not expected to last for twelve continuous months, and that it should not be severe by May, 1998. (R. 423). Although the ALJ did not mention this evidence, he did address a report written by Dr. Kharwadker, asserting that Plaintiff's abdominal impairment would leave him disabled until July of 1998. Therefore, the ALJ provided a written evaluation of evidence that indicated a longer period of disability, or a more severe impairment, than Dr. Greco's assessment. Accordingly, it cannot be said that by not mentioning Dr. Greco's opinion ALJ Karmgard failed to minimally articulate his assessment of the evidence countering the agency's position.

In regards to Dr. Livas' evaluation of Taylor, it was not improper for the Social Security Appeals Council to ignore his findings as they do not relate to the period on or before the date of the ALJ's decision. Commissioner's Reg. § 404.970(b). The Court

will not take into account this evidence for the same reasons that the Court did not take into account the surgeries performed by Dr. Chang in June of 1999.[8]

In sum, after a thorough review of the administrative record, the Court holds that the findings and conclusions of ALJ Karmgard are based upon substantial evidence. We thus grant defendant's motion for summary judgment, and deny Plaintiff's motion for summary judgment or remand. It is so ordered.

ENTER:

*Michael T. Mason*
MICHAEL T. MASON
United States Magistrate Judge

Dated: **May 28, 2002**

---

[8] See above discussion under VI. A.